## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>WOODBRIDGE GROUP OF COMPANIES, LLC, *et al.*,[1]<br><div align="right">Remaining Debtors.</div> | Chapter 11<br><br>Case No. 17-12560 (BLS)<br><br>(Jointly Administered)<br><br>Adv. Proc. No. 19-_____ (BLS) |
| MICHAEL GOLDBERG, as Liquidating Trustee of the Woodbridge Liquidation Trust, successor in interest to the estates of WOODBRIDGE GROUP OF COMPANIES, LLC, *et al.*,<br><br><div align="center">Plaintiff,</div><br>v.<br><br>GILCHRIST METAL FABRICATING CO., INC.,<br><br><div align="center">Defendant.</div> | |

### COMPLAINT FOR AVOIDANCE AND RECOVERY OF
### FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. §§ 544, 548 & 550

Plaintiff Michael Goldberg (the "Plaintiff" or "Trustee"), in his capacity as Liquidating Trustee of the Woodbridge Liquidation Trust, pursuant to the *First Amended Joint Chapter 11 Plan of Liquidation of Woodbridge Group of Companies, LLC and Its Affiliated Debtors* dated August 22, 2018 (the "Plan") of the debtors in the above-captioned cases (the "Debtors"), for his *Complaint for Avoidance and Recovery of Fraudulent Transfers Pursuant to 11 U.S.C. §§ 544, 548 & 550* (the "Complaint") against Gilchrist Metal Fabricating Co., Inc. ("Defendant"), alleges as follows:

---

[1] The Remaining Debtors and the last four digits of their respective federal tax identification numbers are as follows: Woodbridge Group of Companies, LLC (3603) and Woodbridge Mortgage Investment Fund 1, LLC (0172). The Remaining Debtors' mailing address is 14140 Ventura Boulevard, #302, Sherman Oaks, California 91423.

## **Nature of the Action**

1.       The Plaintiff brings this action against the Defendant to avoid and recover certain fraudulent transfers that occurred prior to commencement of the Debtors' bankruptcy cases.

## **The Parties**

2.       Plaintiff is the duly appointed trustee of the Woodbridge Liquidation Trust (the "<u>Trust</u>"), successor in interest to the Debtors.  Pursuant to Paragraph 5.4 of the Plan, the Confirmation Findings (defined below) at paragraphs 13-15, and Article IV of the Liquidating Trust Agreement, the Trustee has the sole authority to pursue claims transferred to the Trust by the Debtors through the Plan and to seek any and all related relief.

3.       Upon information and belief, the Defendant is a corporation formed under the laws of the State of New Hampshire and a former investor with the Debtors.

## **Jurisdiction and Venue**

4.       The United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>") has jurisdiction over this adversary proceeding under the Bankruptcy Code pursuant to 28 U.S.C. §§ 157(a) and 1334(a).

5.       This proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b) and the Bankruptcy Court may enter final orders for the matters contained herein.

6.       Pursuant to Local Bankruptcy Rule 7008-1, the Plaintiff affirms his consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

7.       Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a).

8.       This adversary proceeding is commenced pursuant to Rule 7001(1) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and sections 547 and 550 of the Bankruptcy Code.

## Case Background

9.      Commencing with the first filings on December 4, 2017, and continuing with

other filings through March 27, 2018, Debtors Woodbridge Group of Companies, LLC, *et al.,*

each commenced a case by filing a voluntary petition for relief under chapter 11 of the

Bankruptcy Code (the "Chapter 11 Cases").  The Chapter 11 Cases are jointly administered

under Case No. 17-12560 (BLS).

10.     The Plan was confirmed on October 26, 2018, and became effective on

February 19, 2019.

## Facts

11.     Prior to the commencement of the Chapter 11 Cases, the Debtors operated a

fraudulent investment "Ponzi Scheme."  In its *Findings of Fact, Conclusions of Law and Order*

*Confirming the First Amended Joint Chapter 11 Plan of Liquidation of Woodbridge Group of*

*Companies, LLC and its Affiliated Debtors,* entered on October 26,  2018 (the "Confirmation

Findings"), at paragraph NN, the Bankruptcy Court found as follows:

> NN.    **Conduct of a Ponzi Scheme.**  The evidence demonstrates, and
> the Bankruptcy Court hereby finds, that (i) beginning no later than July 2012
> through December 1, 2017, Robert H. Shapiro used his web of more than 275
> limited liability companies, including the Debtors, to conduct a massive Ponzi
> scheme raising more than $1.22 billion from over 8,400 unsuspecting investors
> nationwide; (ii) the Ponzi scheme involved the payment of purported returns to
> existing investors from funds contributed by new investors; and (iii) the Ponzi
> scheme was discovered no later than December 2017.

12.     Through this fraudulent scheme, the Debtors raised over one billion dollars from

approximately 10,000 investors as either Noteholders or Unitholders (collectively, "Investors").

Those Investors often placed a substantial percentage of their net worth (including savings and

retirement accounts) with the Debtors and now stand to lose a significant portion of their

investments and to be delayed in the return of the remaining portion.  The quality of the

Investors' lives will likely be substantially and adversely affected by the fraud perpetrated by the

Debtors.

13.     Investors were often told that they were investing money to be loaned with respect to particular properties owned by third parties, that those properties were worth substantially more than the loans against the properties, and that they would have the benefit of a stream of payments from these third parties for high-interest loans, protected by security interests and/or mortgages against such properties.  In reality, these statements were lies.  Investors' money was almost never used to make high-interest loans to unrelated, third-party borrowers, there was no stream of payments, Investors' money was commingled and used for an assortment of expenses, including maintaining a lavish lifestyle for Shapiro and his family, brokers' commissions, overhead (largely for selling even more notes and units to investors), and payment of principal and interest to existing investors.  The money that was used to acquire property (almost always owned by a disguised affiliate) cannot be traced to any specific Investor.  These are typical characteristics of Ponzi schemes.

14.     Because the Debtors operated as a Ponzi scheme, obtaining new money from Investors into the Ponzi scheme conferred no net benefit on the Debtors; on the contrary, each new investment was a net negative.  Money was siphoned off to pay the expenses described above, so that the Debtors actually received only a fraction of the investment dollars.  New money also perpetuated the Ponzi scheme, enabling the Debtors to return fictitious profits to early Investors; in the absence of new investment, the house of cards would fall (as it eventually did).  At the same time, each investment created an obligation to return to the defrauded Investor 100% of the investment, such that each new investment increased the Debtors' liabilities and ultimately left them unable to satisfy their aggregate liabilities.

15.     Defendant invested with the Debtors through the purchase of notes and/or units and received principal and interest payments from the Debtors with respect to the investment.  As of the Petition Date, Defendant had been paid in full for all investments with the Debtors, including interest, and is thus a "Net Winner."

16.     During the four years prior to the Petition Date, the Debtors made transfers to Defendant for interest on Defendant's investments in an amount not less than $40,211.09 (the

"Net Winnings" or "Fraudulent Transfers").  A list identifying the Fraudulent Transfers is attached hereto as Exhibit A and is incorporated herein by reference.

17.     The Plaintiff is informed and believes that at least one creditor holding an unsecured claim that is allowable under Section 502 of the Bankruptcy Code or that is not allowable under Section 502(e) of the Bankruptcy Code exists who can avoid the Fraudulent Transfers and/or obligations referred to in this Complaint.  The Plaintiff may assert the rights of such creditors pursuant to Section 544(b) of the Bankruptcy Code.

## FIRST CLAIM FOR RELIEF

### (To Avoid Intentionally Fraudulent Transfers under 11 U.S.C. §§ 544(b) and 548(a)(1)(A), and Cal. Civ. Code § 3439, *et seq.*)

18.     Plaintiff realleges and incorporates by reference each and every allegation in the above paragraphs, as though fully set forth herein.

19.     As the Debtors operated a Ponzi Scheme, applicable law provides that the Fraudulent Transfers were made to Defendant with an actual intent to hinder, delay, or defraud creditors of the Debtors.

20.     Of the Fraudulent Transfers identified in Exhibit A, those made within two years prior to the Petition Date are avoidable pursuant to 11 U.S.C. § 548(a)(1)(A) and Cal. Civ. Code § 3439, *et seq.*, and the Transfers made within four years prior to the Petition Date are avoidable under 11 U.S.C. § 544(b) and Cal. Civ. Code § 3439, *et seq.*  Plaintiff is entitled to an order and judgment that each of the Fraudulent Transfers that constitutes Net Winnings is avoided.

## SECOND CLAIM FOR RELIEF

### (Recovery of Property – 11 U.S.C. §§ 544(b) and 550, and Cal. Civ. Code § 3439, *et seq.*)

21.     Plaintiff realleges and incorporates by reference each and every allegation in the above paragraphs, as though set forth fully herein.

22.     Defendant is the initial transferee of the Fraudulent Transfers, or the immediate or mediate transferee of such initial transferee.

23.     Plaintiff is entitled to avoid the Net Winnings of the Fraudulent Transfers under Sections 544 and 548 of the Bankruptcy Code, and Cal. Civ. Code § 3439, *et seq.*  As Defendant

is the initial, immediate, or mediate transferee of Fraudulent Transfers, Plaintiff is entitled to recover for the estate the proceeds or value of the respective Net Winnings pursuant to under 11 U.S.C. § 550 and/or Cal. Civ. Code § 3439, *et seq.*

**WHEREFORE,** Plaintiff prays for judgment as follows:

1.      For a determination that each of the Fraudulent Transfers that constitutes Net Winnings is avoidable as a fraudulent transfer under Sections 544 and 548 of the Bankruptcy Code and Section 3439, *et seq.,* of the California Civil Code, and that Plaintiff is entitled to recover the Net Winnings in the total amount of $40,211.09 under Section 550 of the Bankruptcy Code and Section 3439, *et seq.,* of the California Civil Code;

2.      For costs of suit incurred herein, including, without limitation, attorneys' fees;

3.      For pre- and post-judgment interest on the judgment amount to the fullest extent allowed by applicable law; and

4.      For such other and further relief as the Court may deem just and proper.

Dated:  November 20, 2019

*/s/ Colin R. Robinson*
Bradford J. Sandler (DE Bar No. 4142)
Andrew W. Caine (CA Bar No. 110345)
Colin R. Robinson (DE Bar No. 5524)
PACHULSKI, STANG, ZIEHL & JONES LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: bsandler@pszjlaw.com
        acaine@pszjlaw.com
        crobinson@pszjlaw.com

*Counsel to Plaintiff Michael Goldberg, in his capacity as Liquidating Trustee of the Woodbridge Liquidation Trust*